# United States District Court

__NORTHERN__ DISTRICT OF E-FILING CALIFORNIA

UNITED STATES OF AMERICA
V.
KHAN QUOC TIEU

**CRIMINAL COMPLAINT**

CASE NUMBER: 08-MJ-70284 PVT

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On a date unknown but no later than __May 13, 2008__, in __Santa Clara County__ in the __Northern__ District of __California__ defendant did

knowingly possess with intent to distribute a controlled substance, namely a mixture or substance containing a detectable amount of Oxycodone (an opiate), which is a controlled substance under 21 U.S.C. § 812, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(C).

I further state that I am a __Special Agent with the Drug Enforcement Administration__ and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

MAXIMUM PENALTIES under 21 U.S.C. § 841(b)(1)(C):
  Maximum Term of Imprisonment:   20 years
  Minimum Supervised Release:   3 years
  Fine: $1,000,000;   Special Assessment: $100

FILED
MAY 14 2008
CLERK
NORTHERN...

Requested bail: Issue no bail warrant / government will request detention

APPROVED AS TO FORM: _____
                                        AUSA YEN

Continued on the attached sheet and made a part hereof:  ☒ Yes   ☐ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

May 14, 2008                              at   San Jose, California
Date                                             City and State

Patricia V. Trumbull
United States Magistrate Judge              _____
Name & Title of Judicial Officer              Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Anthony Guzman, being duly sworn, hereby depose and state the following:

### INTRODUCTION AND PURPOSE OF AFFIDAVIT

1. This Affidavit is submitted in support of a request for the issuance of a complaint for Khan Quoc Tieu ("Tieu"), because there is probable cause to believe that Tieu possessed with intent to distribute, Oxycodone 80 mg, a federally controlled substance, in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(C). As described below Tieu received and possessed two (2) incoming Global Express mail parcels that were sent from India, to Santa Clara, California, and that these parcels together contained over 24 pounds of Oxycodone, a Schedule II controlled substance under 21 U.S.C. § 812, Schedule II (a)(1).

### AFFIANT'S BACKGROUND

2. I am familiar with the facts as set forth herein from my personal observations, observations by other law enforcement officers as related to me in conversation and in written I have been employed by the Drug Enforcement Administration (DEA) as a Special Agent since March 2006 and am currently assigned to the San Francisco Field Division, San Jose Resident Office. While serving as a Special Agent for the DEA, I have participated in investigations of illicit drug trafficking organizations, including organizations involved in distributing methamphetamine. Prior to working as a DEA Special Agent, I attended and graduated from the DEA Basic Agent Training Program in Quantico, Virginia. At the DEA Basic Agent Training Program, I received several hundred hours of comprehensive, formalized instruction in the recognition, distribution, manufacturing and packaging of controlled substances, as well as money laundering techniques and asset forfeiture.

1

3.  Prior to attending the DEA Basic Agent Training Program, I worked with The El Paso Police Department as a patrol officer for six months; beginning May 2005. Prior to working as an El Paso Police Officer, I attended The El Paso Policed Department Training Academy. In the El Paso Police Department Training Academy I received several hundred hours of comprehensive, formalized instruction in the duties of a patrol officer and in municipal and stated law. I have spoken to, and worked with, more experienced federal, state, and municipal agents and officers in connection with my work as a DEA Special Agent and El Paso Police Officer. In the course of my investigative experience as a DEA Special Agent, I have developed experience in the use of confidential informants, wire and physical surveillance, telephone toll analysis, investigative interviews, and the service of search and arrest warrants. The investigation in which I have participated have included such issues as the possession with intent to distribute, and distribution of controlled substances, the conducting of monetary transactions involving the proceeds of specified unlawful activities and use of monetary instruments to launder those proceeds, and conspiracies associated with criminal narcotics offenses.

reports, and from documents and other evidence obtained as a result of this investigation.

## STATEMENT OF PROBABLE CAUSE

4.  On February 4, 2008, the DEA New Delhi, India Country Office provided information to the DEA New York Field Division (NYFD), Organized Crime Drug Enforcement Strike Force, Group Z-53, that a criminal organization was sending approximately 100 Kilograms of ephedrine to New York. On that same day, the NYFD located the packages at a DHL Facility in Long Island, New York. The NYFD subsequently obtained a search warrant for these packages on February 5, 2008. Upon execution of the search warrants 104 Kilograms of pseudoephedrine

and ephedrine was discovered concealed amongst ethnic foods. Ephedrine is a precursor chemical on the "list I chemical" list under 18 U.S.C. § 802(34)(C). Pseudoephedrine is a precursor chemical on the "list I chemical" list under 18 U.S.C. § 802(34)(K). Ephedrine and pseudoephedrine are precursor chemicals for the manufacture of methamphetamine.

5. On May 7, 2008, the DEA New Delhi, India Country Office provided information to the DEA San Jose Resident Office (SJRO) that a package containing pseudoephedrine was en-route to "Tony LNU" at a Day's Inn Hotel at 859 El Camino Real, Santa Clara, CA 95050. This package was coming from the same criminal organization that had sent the packages to New York, which were found to contain 104 Kilograms of pseudoephedrine and ephedrine.

6. The DEA New Delhi Country Office also provided information that the package would be going to Room 101 at the Day's Inn Hotel. On May 7, 2008 DEA Special Agent Michael Robinson and DEA Special Agent Pat Donlin from the SJRO met with Tess Bagamasped the Day's Inn front desk clerk. Tess Bagamasped provided Agents Robinson and Donlin with the following occupant information for Room 101 at the Day's Inn Hotel. The room is occupied by Khan Quoc Tieu, who had provided a home address of 8 Horne Dr. Brampton, Ontario, Canada. Bagamasped also provided Tieu's phone number 647-836-3986 and his Canadian Driver's License Number ON-T4216-43477-60701. Tess Bagamasped was unable to print the above information, but wrote it on a notepad for the agents. Tess Bagamasped stated that no packages had been delivered to the Day's Inn Hotel for that room on May 7, 2008.

7. On May 7, 2008, Agent Pat Donlin contacted Postal Inspector Mitch Herzog and asked Inspector Herzog to check with the Post Office to see if a parcel had been received for the Day's Inn, 859 El Camino Real, Santa Clara, CA 95050. Agent Donlin advised that the parcel

3

was coming from India and it contained ephedrine. Based upon the information, Inspector Herzog placed a parcel watch for the above mentioned address. A parcel watch is a request made to the delivery unit or the mail processing unit, requesting notification be made to the postal inspector if packages have been received for particular persons or addresses.

8. On May 8, 2008, DEA Agents from the San Jose Office surveilled the area of the Day's Inn Hotel. An Asian male was observed leaving Room 101 at the Day's Inn Hotel. The Asian male was observed using a Chevrolet Malibu with California license plates 6AKG711. The vehicle is registered to Enterprise Rent a Car, 2950 Merced St. #206, San Leandro, CA 94577

9. Additionally, on May 8, 2008, Agents Donlin and I spoke with the manager, at the front desk of the Day's Inn Hotel, Mary Rodriguez. She provided a printout of information related to Room 101. Mary Rodriguez stated that the room was reserved by Michael Dung and was reserved until May 10, 2008. She also stated that Tieu had asked if any packages have arrived for him at the office. Mary Rodriguez stated that Tieu had originally said the package was for his girlfriend and to let him know as soon as it arrives. Mary Rodriguez stated that Tieu is alone in his room, and Agents have not observed Tieu meet with anyone while at the hotel. Mary Rodriguez also stated that when Tieu asked about the package the following day, he did not mention his girlfriend. Tieu told her that he was expecting a package, and to let him know when it arrives. Mary Rodriguez stated that Tieu always asks about the package when he is in the front office. She also stated that Tieu bought watermelon as a gift for her to remind her to notify him when the package arrives.

10. On May 9, 2008, the DEA in San Jose was advised by the DEA New Delhi, India Country Office, that two packages had cleared Customs, that were coming in from the same

4

criminal organization that had sent the packages to New York that were found to contain 104 Kilograms of pseudoephedrine and ephedrine.

11. On May 9, 2008, I met with Mary Rodriguez. Mary Rodriguez stated that Tieu had again reminded her that he is still expecting a package to be delivered to him. She said Tieu reminded her to mention to her replacement that he is expecting a package. Mary Rodriguez also stated that Tieu told her that the package might not be in his name but that it will be marked for Room 101.

12. I also met with Mary Rodriguez on May 10, 2008. She told him that Tieu had extended his stay with the Day's Inn Hotel until May 15, 2008. Mary Rodriguez stated that Tieu had paid cash for the extra five days, since Day's Inn Hotel does not accept pre-paid credit cards. Mary Rodriguez stated that Tieu told her that he was still expecting a package to arrive at the hotel for him, and that the package will be addressed to "Tony" and the package was going to be coming from his girlfriend.

13. On, May 11, 2008, Inspector Herzog was telephonically contacted by Annie Feliciano, Express Mail clerk, at the Sanchez Carrier Annex, Santa Clara, CA 95050. Feliciano had left me a voice mail message informing him that a parcel had been received destined for Days Inn in Santa Clara, California. The parcel was addressed to Days Inn, 859 El Camino Real, Santa Clara, CA 95073. Since the Sanchez Annex was closed, Inspector Herzog was unable to recover the subject parcel until the following morning.

14. Prior to responding the Sanchez Annex Inspector Herzog was contacted by Agent Donlin. He informed him that there was a second parcel addressed to Days Inn and that he had confirmed that it had arrived at San Jose by checking the Postal Services Web Site. Inspector

5

Herzog went to the Sanchez Annex and took possession of the two parcels ("Two Subject Parcels").

15.     On May 12, 2008 at approximately 4:30 AM Agent Donlin received the tracking numbers from Special Agent Steve Horness from the DEA New Delhi Office for the packages destined for delivery to the Day's Inn Hotel. The tracking numbers are EM0466444831 N and EM0466444971 N. Agent Horness also stated that the packages were going to be delivered by the United States Postal Service. Agent Horness received his information from the Indian Directorate of Revenue Intelligence.

16.     On May 12, 2008, Mary Rodriguez the manager at Days Inn told Agent Donlin that Tieu had come into the office and told her that the package he was expecting would be in the name of "Tony Lee." Rodriguez said that Tieu had spent three hours in the office reading the newspaper.

17.     Agent Donlin asked Mary Rodriguez if he could recover the trash from Room 101, the room rented to Tieu. Rodriguez consented and Agent Donlin found the maid down the hall from room 101. Agent Donlin asked the maid to point out the trash from Room 101. After the maid pointed out the trash for Room 101, Agent Donlin recovered the trash and took it to his car. Inside the trash he located the EMS tracking numbers # EM046644483IN and EM 046644497IN which were written on a piece of Day's Inn stationary.

18.     On May 13, 2008, the Honorable Patricia V. Trumbull signed a federal search warrant authorizing the search of the Two Subject Parcels. On May 13, 2008, I along with other agents executed the search warrant on the Two Subject Parcels. The first, larger package contained chili peppers and chili powder as well as various food items. Hidden within the chili

peppers and chili powder was a package wrapped in plastic, inside of which were clear plastic bags containing green pills imprinted with the words CDN" and on the other side of the pill was printed the number "80. The second, smaller package also contained chili powder and chili peppers. Hidden within chili powder and chili peppers was a package wrapped in plastic, inside of which were clear plastic bags containing green pills imprinted with the words "CDN" and on the other side of the pill was printed the number "80." Based on the Drug Identification Bible, these pills were Oxycodone, each containing 80 milligrams,, and that these pills were manufactured by Purdue Pharma Canada.

19   The DEA Agents tested a pill from each Parcel with the Marquis Reagent kit that tests for the presence of methamphetamine and the presence of opiates. The substance within the pills tested positive for the presence of opiates.

20   Oxycodone is an opiate, and it is a Schedule II Controlled Substance, under 21 U.S.C. § 812, Schedule II (a)(1) ("Opium and opiate, and any salt, compound, derivative, or preparation of opium or opiate").

21   On May 13, 2008, the DEA and the Postal Inspection Service effectuated a controlled delivery of the two parcels to Days Inn, 859 El Camino Real Santa Clara, California. The parcels were delivered to the office by a Postal Inspector. Shortly, after the delivery of the parcels, Agent Donlin observed Sharon, a clerk at Days Inn, attempt to reach Khan Tieu by telephone. Sharon was unable to contact Tieu. Agent Donlin instructed Sharon to go to Room 101 and make contact with Tieu. I observed Sharon at Room 101 and saw the door open. When Sharon returned to the office she informed Agent Donlin that she had spoken with Tieu and told him that the two parcels had arrived. She said that Tieu told her that he was going to come to the

office and pick up the parcels. I observed Tieu exit Room 101 and walk towards the office, shortly after Sharon had returned to the office. Agent Donlin observed Tieu enter the office and speak with Sharon. Sharon told Tieu that he needed to sign for the two parcels.

22. Tieu was observed by Agent Donlin signing a Days Inn form for the parcels. Tieu picked up one of the parcels and exited the office.

23. As Tieu approached Room 101, Robinson and I met him before he got into the room. We identified ourselves and asked Tieu if he had anything illegal in the parcel. He said no. Agent Robinson asked Tieu if he minded they talked to us.,and Tieu agreed to talk to the us. We then asked Tieu for consent to enter Room 101. Tieu consented and we all entered the room. Agent Khansmith opened the parcel and found the Oxycodone.

24. Tieu was questioned by Agent Robinson and denied any knowledge of the contents of the parcel. Additionally, Tieu also denied that he knew what he was supposed to do with the parcel. He said he was supposed to make a call to Canada; but he didn't know the number because it was in his phone. He again said he didn't know the name of the person he was supposed to call. Tieu claimed he was here to visit his girlfriend and provided her name, Jennifer, but could not provide an address or her last name. During this questioning the door of Room 101 remained open, and Tieu was not handcuffed or restrained.

25. I then arrested Tieu and provided Tieu with his Miranda Warnings in English. Tieu was asked if he understood and he said no. Leon Dang, DEA Intel Analyst, was telephonically contacted and read Tieu the Miranda Warnings in Vietnamese. Tieu then acknowledged that he understood his rights and consented to be interviewed. Agent Donlin then proceeded to interview him. During the interview Tieu provided inconsistent statements and

8

attempted to conceal his activities. For example, when the agents asked him why he was in Santa Clara, and he at first said he was there to visit his girlfriend but later recanted and said he was there to visit his brother. He was confronted by agents on several occasions when he provided inaccurate information regarding his movements during the previous 6 days. For example, he denied going to a specific apartment complex in Santa Clara, CA, despite the fact that the DEA which had been surveilling him for the last five days, saw him going to that apartment complex two day in a row.

26. Eventually, Tieu began to provide some information to agents. He said the name of his contact in Canada was Jason Le. Tieu said Jason Le worked at a factory as a welder and that he had known him for many years. Tieu continued to provide inconsistent statements to agents. For example, Tieu initially denied getting paid for receiving the two Subject Parcels. However, later, Tieu admitted that Jason had paid for his travel expenses to Santa Clara, CA. In a subsequent conversation, Tieu admitted that he was to be paid $2000 for his role. Tieu gave the agents Jason Le's phone number from memory, despite earlier stating that he would have to retrieve the phone number from his phone.

27. At one point agents noticed a new backpack and suitcase. Tieu was asked why he had purchased these and he said he was told by Jason to buy the backpack and suitcase to carry the stuff from the parcels. Tieu claimed he was being used and consented to making a phone call to Jason.

28. After completing the interview, Tieu was taken to the DEA office in San Jose. Tieu made several phone calls to Jason. His conversations, which were in Vietnamese, were interpreted by Leon Dang and Tiffany Quach, DEA Admin Assistant. Most of the conversations

were recorded. Several phone calls went unmonitored by a Vietnamese speaker. During the phone calls Jason told him that he needed to take the "razors" to his "girlfriends." Tieu said that meant for him to take the items from the parcels to a new hotel and to wait around several days for instructions.

## CONCLUSION

Based on the foregoing information and on my training and experience listed above, there is probable cause to believe that Khan Quoc Tieu did knowingly possess with intent to distribute Oxycodone 80 mg, in violation of 21 U.S.C. Section 841(a) (1) and § 841(b)(1)(C).

Anthony Guzman
DEA Special Agent

Subscribed and sworn to me this 14 day of May, 2008.

PATRICIA V. TRUMBULL
UNITED STATES MAGISTRATE JUDGE